United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN F. WALTERS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br><br>　　　　Defendant. | Case No. 15-cv-01967-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Docket Nos. 13-14 |

　　　　In January 2011, Plaintiff John F. Walters filed applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act. *See* AR 123-38. The applications were denied initially in May 2011, *see* AR 30-41, and then upon reconsideration in December 2011. *See* AR 46-47, 58-62. Mr. Walters then requested a hearing before an administrative law judge ("ALJ"). *See* AR 66. A hearing was held before ALJ Major Williams, Jr., in April 2013. *See* AR 467. Subsequently, on July 8, 2013, ALJ Williams issued his decision, concluding that Mr. Walters was not disabled from April 1, 2009 (the alleged onset date) through the date of his decision. *See* AR 13-29. In August 2013, Mr. Walters asked that the Appeals Council for the Social Security Administration review the ALJ's decision, see AR 9A, but that request was denied in March 2015. *See* AR 6-8. Mr. Walters then initiated the instant action, challenging the ALJ's decision.

　　　　Mr. Walters has exhausted his administrative remedies with respect to his claim of disability. This Court has jurisdiction to review pursuant to 42 U.S.C. § 405(g). Mr. Walters has moved for summary judgment, seeking a reversal of the Commissioner's decision and a remand for further consideration. The Commissioner has cross-moved for summary judgment. Having considered the parties' briefs and accompanying submissions, including but not limited to the

administrative record, and good cause appearing therefor, the Court hereby **GRANTS** Mr. Walters's motion for summary judgment and **DENIES** the Commissioner's cross-motion. The case is remanded for further proceedings within the Social Security Administration.

## I.   FACTUAL & PROCEDURAL BACKGROUND

In January 2011, Mr. Walters filed applications for disability insurance and supplemental security benefits. According to Mr. Walters, he suffered from a hereditary bone disease and arthritis, which affected, *inter alia*, his knees, lower back, ankles, feet, right hand, and right arm, and he became unable to work as of April 1, 2009. *See* AR 30, 36, 478-80. As noted above, ALJ Williams rejected Mr. Walters's claim for benefits, applying the five-step sequential evaluation process provided for by 20 C.F.R. § 404.1520.

> "Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations. Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities. Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix. Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government. Claimants not disqualified by step five are eligible for benefits."

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

In the instant case, ALJ Williams made the following rulings regarding the five steps.

At step one, the ALJ found that Mr. Walters had not engaged in substantial gainful activity since the alleged onset date of April 1, 2009. *See* AR 15.

At step two, the ALJ determined that Mr. Walters suffered from a number of severe impairments, including progressive diffuse osteoarthritis, hereditary multiple exostoses, chronic hepatitis C, and chronic pain syndrome. *See* AR 15.

At step three, the ALJ concluded that Mr. Walters did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* AR 16.

At step four, the ALJ found that Mr. Walters had the residual functional capacity ("RFC") to perform less than the full range of medium work. More specifically, the ALJ held that Mr. Walters could "sit for six hours in an eight hour workday with normal breaks; . . . stand and/or walk for four hours in an eight hour workday with normal breaks; . . . lift and carry 25 pounds frequently and 50 pounds occasionally; [and] perform[] all other postural activity [except for crawling] on an occasional basis." AR 18. The ALJ further held that Mr. Walters had "no limitations relative to using his bilateral upper extremities for reaching and for fine and gross manipulation." AR 18. Based on this RFC, the ALJ concluded that Mr. Walters could not perform any of his past relevant work, such as a lawnmower salesman and a helicopter pilot and maintenance worker. *See* AR 26.

Finally, at step five, the ALJ found that, based on Mr. Walters's age, education, work experience, and RFC, there were "jobs that exist[ed] in significant numbers in the national economy that [he could] perform." AR 27.

## II.   DISCUSSION

A.   Legal Standard

After a final decision on a claim for benefits by the Commissioner, the claimant may seek judicial review of that decision by a district court. *See* 42 U.S.C. § 405(g). The Commissioner's decision will be disturbed only if the ALJ has committed legal error or if the ALJ's findings are not supported by substantial evidence. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) ("We will uphold the Commissioner's denial of benefits if the Commissioner applied the correct legal standards and substantial evidence supports the decision."). Substantial evidence is relevant evidence – "more than a scintilla, but less than a preponderance" – that a reasonable mind may accept to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). A court evaluates "the record as a whole, . . . weighing both the evidence that supports and detracts from the ALJ's conclusion" to determine if substantial evidence supports a finding. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence supports "more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

3

B. Remand Based on *Luna*

As an initial matter, Mr. Walters asserts that the ALJ's findings may not have been supported by substantial evidence because, in August 2015 (*i.e.*, several months after the Appeals Council denied him relief with respect to ALJ Williams's decision), the Social Security Administration issued a decision on a subsequent disability application filed by Mr. Walters and found him to be disabled as of July 9, 2013 – *i.e.*, exactly one day after ALJ Williams's decision which found him to be not disabled from April 1, 2009, to July 8, 2013. *See* Mot., Ex. A (notice of award). Mr. Walters argues that, given these circumstances, a remand to the agency is warranted so that it, in effect, reassess whether ALJ Williams's decision was correct.

Mr. Walters's argument in support of a remand is predicated on *Luna v. Astrue*, 623 F.3d 1032 (9th Cir. 2010). In *Luna*, the claimant filed for benefits and the ALJ found her to be not disabled through January 27, 2006. The claimant appealed this decision but, while her appeal was pending, she filed a second application for benefits which was granted on August 20, 2007. *See id.* at 1033. The notice of award reflected that the claimant was disabled as of January 28, 2006 – *i.e.,* "one day after the date [the claimant] was found not to be disabled based on her first application. [The claimant] did not provide any further information about the second, successful application." *Id.*

"Before the district court the parties [in *Luna*] agreed that the case should be remanded to the agency to reconcile the denial of benefits based on [the claimant's] first application with the grant of benefits based on her second application, but they did not agree on the terms of the remand." *Id.* The claimant argued that the agency's second decision granting benefits "indicated that she was disabled for the earlier time period covered by her first application as well, so the proper remedy would be a remand ordering that benefits be paid for the earlier time period." *Id.* The Social Security Administration argued that the remand should be for reconsideration as to whether the claimant was actually disabled during the period relevant to her first application for benefits. The district court agreed with the agency and "remanded for resolution of factual issues pursuant to 42 U.S.C. § 405(g)." *Id.*

Section 405(g) provides in relevant part as follows:

4

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). "New material is material when it bear[s] directly and substantially on the matter in dispute, and if there is a reasonabl[e] possibility that the new evidence would have changed the outcome of the . . . determination." *Luna*, 623 F.3d at 1033 (internal quotation marks omitted).

The Ninth Circuit agreed with the district court that "the finding of disability based on [the claimant's] second benefits application was new and material evidence warranting remand for further factual consideration because it commenced at or near the time [she] was found not disabled based on the first application." *Id.* It explained as follows: "the 'reasonable possibility' that the subsequent grant of benefits was based on new evidence not considered by the ALJ as part of the first application indicates that further consideration of the factual issues is appropriate to determine whether the outcome of the first application should be different." *Id.*

The Ninth Circuit also underscored that this was not "a case where an initial denial and subsequent award were easily reconcilable on the record before the court" – *e.g.*, where the second application involved different medical evidence, a different time period, and a different age classification. *Id.*

> We cannot conclude based on the record before us whether the decisions concerning [the claimant] were reconcilable or inconsistent. There was only one day between the denial of [the claimant's] first application and the disability onset date specified in the award for her successful second application, but she may have presented different medical evidence to support the two applications, or there might be some other reason to explain the change. Given this uncertainty, remand for further factual proceedings was an appropriate remedy.

*Id.* (emphasis added).

*Luna* is analogous to the instant case. In *Luna*, the claimant was denied benefits through January 27, 2006, but then was awarded benefits starting the very next day. Here, Mr. Walters

was denied benefits through July 8, 2013, but then was awarded benefits starting the very next day. In *Luna*, the claimant did not provide any information about her second application other than that it was successful and that she was awarded benefits as of the day following the ALJ's decision denying benefits on her first application. Here, Mr. Walters has not provided any information about his second application other than that it was successful and that he was awarded benefits as of the day following the ALJ's decision denying benefits on his first application. Given these circumstances, the Court is hard pressed to see why resolution of this case should be any different from the resolution of *Luna* – *i.e.*, a remand so that the Commissioner may further consider potentially new and material evidence. Here, as in *Luna*, this is not a case where the first and second agency decisions are easily reconcilable based on the record before the Court.

In her papers, the Commissioner contends that *Luna* is distinguishable because, there, the agency actually *agreed* that the case should be remanded so that the agency could reconcile the denial of benefits based on the claimant's first application with the grant of benefits based on her second application.[1] The only dispute between the *Luna* parties was what the terms of the remand should be. While the Commissioner is correct, the Ninth Circuit's analysis did not rest on that agreement by the Commissioner. The Ninth Circuit's analysis was based on 42 U.S.C. § 405(g), which provides that a court "may *at any time* order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added). The Ninth Circuit clearly expressed its agreement with the district court that the claimant's "second benefits application was new and material evidence warranting remand," in particular, given the timing. *Luna*, 623 F.3d at 1033.

The Commissioner protests that ordering a remand would "produce an absurd result" – *i.e.*,

---

[1] The Commissioner claims that, in *Luna*, the agency "agreed with the claimant that the challenged ALJ's decision contained indefensible errors based on the record that was before the ALJ." Opp'n at 4. However, the district court opinion cited in support simply states as follows: "[T]he Appeals Council agreed to accept voluntary remand to re-assess Plaintiff's mental and physical residual capacity, reevaluate all of the medical evidence, properly address Plaintiff's obesity, and consider an earlier onset date than the date found in the Notice of Award." *Luna v. Astrue*, No. CIV 07-719-PHX-MHB, 2008 U.S. Dist. LEXIS 108381, at *4 (D. Ariz. June 23, 2008)

6

it would "not only permit[], but encourage[], a plaintiff to provide the federal court as little information and evidence as possible [in an initial application], even though the plaintiff is responsible for providing medical evidence and knows what evidence he submitted or alerted the agency to when he filed the second application." Opp'n at 5-6. The Court is not persuaded. A claimant for disability or supplemental security benefits has little incentive to withhold information that would support an application for benefits; in other words, it is hard to imagine that a claimant would risk an immediate award of benefits just so as to set up a potentially successful second application. This is especially so because, even if the second claim is granted, the differing results could be justified on the basis of differing evidence submitted by the claimant in each proceeding. The risks would seem too high to justify a strategy to sandbag. Moreover, the Commissioner's position ignores the ALJ's duty to fully and fairly develop the record (more specifically, where there is ambiguous evidence or where the record is inadequate to allow for proper evaluation of the evidence). *See Mayes*, 276 F.3d at 459-60.

The Court acknowledges the Commissioner's point that it is not necessarily inconsistent for the agency to deny a first application for benefits and then grant a second application, even when the timing is such as is presented here; that is, it is entirely possible for two ALJs to view the same or similar time period and reach reasonable, but differing, conclusions on disability. *Cf. Burch*, 400 F.3d at 680-81 (noting that an ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation). But the larger point here is that a remand is needed to see if the different results *can* be reconciled in the first place. The Commissioner is putting the cart before the horse. *Cf. Chudy v. Colvin*, 10 F. Supp. 3d 203, 207 (D. Mass. 2014) (stating that, in the absence of evidence as to why the agency ruled in the claimant's favor on the second application, "it is simply prudent to have the matter reconsidered on remand").

Finally, the Court takes into account that there are some opinions from other circuits in tension with *Luna*. In particular, in *Allen v. Commissioner of Social Security*, 561 F.3d 646 (6th Cir. 2009), the Sixth Circuit was presented with similar circumstances – *i.e.*, the claimant was denied benefits with respect to his first application but granted benefits with respect to his second application, and the benefits began the day after the ALJ's denial. *See id.* at 647, 649-50. The

court concluded that "a subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g)." *Id.* at 653. It explained as follows:

> If a subsequent favorable decision – separated from any new substantive evidence supporting the decision – could itself be "new evidence" under sentence six [of § 405(g)], the only way that it might change the outcome of the initial proceeding is by the power of its alternative analysis of the same evidence. But remand under sentence six is not meant to address the "correctness of the administrative determination" made on the evidence already before the initial ALJ. In addition, it is overly broad to read the words "new evidence" in sentence six to include a subsequent decision based on the same evidence. In *Melkonyan*, the Court noted that the legislative history of § 405(g) shows that "Congress made it unmistakably clear that it intended to limit the power of district courts to order remands for 'new evidence' in Social Security cases."
>
> A sentence six remand would be appropriate based on Allen's subsequent favorable decision only if the subsequent decision was supported by new and material evidence that Allen had good cause for not raising in the prior proceeding. It is Allen's burden to make this showing under § 405(g), but he has failed to meet this burden. On appeal, Allen does not argue that there is any new substantive evidence that might change the outcome of the previous denial, but instead relies exclusively on the existence of the subsequent decision. To the extent that Allen argues that remand is appropriate based on the *possibility* of new and material evidence, this contradicts the clear language of § 405(g) that requires a "*showing that there is new evidence* which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added).

*Id.* at 653 (emphasis added).[2]

In *Luna*, the Ninth Circuit did not necessarily hold that the second agency decision awarding benefits constituted new evidence itself. The Ninth Circuit stated: "the 'reasonable possibility' that the subsequent grant of benefits was based on new evidence not considered by the ALJ as part of the first application indicates that further consideration of the factual issues is appropriate to determine whether the outcome of the first application should be different." *Luna*,

---

[2] *Allen* was decided by a divided panel. Judge Clary dissented, noting, *inter alia*, that, "[w]ithout examining the evidence submitted in support of Allen's subsequent application for benefits, this Court cannot determine whether there is 'new evidence which is material' underlying the subsequent determination of disability that would support a sentence six remand." *Allen*, 561 F.3d at 654 (Clay, J., dissenting).

8

1  623 F.3d at 1033.  In any event, even if *Luna* and *Allen* do conflict, *Allen* is not binding authority
2  on this Court[3]; *Luna* is and, as discussed above, the Commissioner has failed to show that the
3  instant case is materially distinguishable from *Luna* such that a different result should obtain.

4  C.    Disqualification of Dr. Chen

5  In his papers, Mr. Walters argues that, although there should be a remand under *Luna* to
6  determine whether the agency decisions on his two applications are reconcilable, there is an
7  independent basis to remand – and that remand will involve a different analysis.  More
8  specifically, Mr. Walters argues that this Court should remand to the agency for further
9  proceedings because the ALJ relied heavily on the opinion of a consulting physician, Dr. Chen,
10 and, in December 2013, approximately six months after the ALJ issued his decision, the California
11 Department of Social Services Disability Determination Service Division ("California DDSD")
12 removed Dr. Chen from its consultative examination panel.  *See* AR 465; *see also* SSR 96-6p
13 (stating that "[s]tate agency medical and psychological consultants are highly qualified physicians
14 and psychologists who are experts in the evaluation of the medical issues in disability claims
15 under the Act" and that, "[a]s members of the teams that make determinations of disability at the
16 initial and reconsideration levels of the administrative review process (except in disability
17 hearings),they consider the medical evidence in disability cases and make findings of fact on the
18 medical issues"); https://www.ssa.gov/disability/determination.htm (last visited September 30,
19 2016) (stating that "[m]ost Social Security disability claims are initially processed through a
20 network of local Social Security Administration (SSA) field offices and State agencies (usually
21 called Disability Determination Services or DDSs)").  Apparently, the California DDSD

> sent Dr. Chen an initial Corrective Action letter dated September 2,
> 2011 [*i.e.*, well before the ALJ decision], identifying four main areas
> of concern – quality of CE reports, thoroughness of examinations,

---

[3] Similarly, *Baker v. Commissioner of Social Security*, 520 Fed. Appx. 228, 229 n.1 (4th Cir. May 6, 2013) (citing *Allen* favorably; adding that "Baker has not met her burden of showing that evidence relied upon in reaching the favorable decision pertains to the period under consideration in this appeal"), and *Gill v. Colvin*, No. 13-1792 (1st Cir. Apr. 9, 2014) (siding with *Allen* more than *Luna*; noting that claimant has the burden of proving entitlement to a remand and all that claimant provided was a Disability Determination Explanation, which suggested that all or nearly all of the medical evidence supporting the second application for benefits post-dated the denial of the first application), are not binding authority.

> religious comments, and unauthorized neurological examinations. We monitored the quality or his work and have not seen improvement consistent with the Corrective Action letter. Subsequently, we sent a follow-up Corrective Action letter on October 14, 2013 [*i.e.*, a few months after the ALJ's decision], identifying several additional complaints we received related to the thoroughness of his exams, quality of his reports, and his unprofessional manner toward claimants.
>
> Despite two Corrective Action letters, we have continued to receive complaints regarding the quality of Dr. Chen's exams. We find that he has not made the changes required to provide adequate service to our claimants and the DDSD. Therefore, we are taking adverse action and have removed him from the DDSD CE [consultative examination] panel effective immediately.

AR 465.[4]

Mr. Walters did provide the Appeals Council with information about Dr. Chen's "disqualification" in February 2014. *See* AR 463-64. The Appeals Council made that new evidence part of the administrative record. *See* AR 5. Nevertheless, even considering the new evidence, the Appeals Council declined to give Mr. Walters any relief, stating, *inter alia*: "We have found no reason under our rules to review the Administrative Law Judge's decision" and "We found that this [new] information does not provide a basis for changing the Administrative Law Judge's decision." AR 6-7; *see also* 20 C.F.R. § 404.970(b) (providing that, "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision"; adding that the Appeals Council will then review the case to see if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record"); *Martinez v. Astrue*, No. 12-cv-02997-JCS, 2014 U.S. Dist. LEXIS 10534, at *59-60 (N.D. Cal. Jan. 28, 2014) (indicating that evidence dated after an ALJ's decision can still be related to the period before the ALJ's decision). The Appeals Council further stated: "This means that the Administrative Law Judge's decision is the final decision of the Commissioner of Social Security in your case." AR 6.

Under Ninth Circuit law, "when the Appeals Council considers new evidence in deciding

---

[4] In Mr. Walters's case, he indicates that he is challenging the thoroughness of the examination that Dr. Chen conducted on him. *See* AR 482 (testifying at ALJ hearing that the examination lasted only ten minutes).

whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1163 (9th Cir. 2012); *see also id.* at 1162 (stating that, "as a practical matter, the final decision of the Commissioner includes the Appeals Council's denial of review, and the additional evidence considered by that body is 'evidence upon which the findings and decision complained of are based'").

Here, the Court finds that further development of the record, and subsequent consideration thereof, is needed in order to assess whether there is substantial evidence to support the ALJ's decision. The removal of Dr. Chen from the California DDSD's panel does not automatically render all of his previous opinions invalid. However, it does raise serious questions about whether his opinions in this case are substantiated, especially as Mr. Walters raises a complaint similar to those which led to Dr. Chen's removal. *See* note 4, *supra*. The Commissioner did have the developments regarding Dr. Chen before it; the Commissioner suggests, however, that the ALJ's reliance on Dr. Chen's opinion is harmless error. *See* AR 6-7. However, it is far from clear whether any such reliance was indeed harmless. ALJ Williams relied heavily on Dr. Chen's opinion. *See, e.g.*, AR 23 (ALJ "conclud[ing] that [the] Dr. Chen RFC assessment is entitled to great evidentiary weight"). Moreover, the ALJ also relied heavily on Dr. Chen's opinion as an indirect matter – *i.e.*, because the testifying medical expert, Dr. Brovender, largely agreed with Dr. Chen's opinion and the ALJ gave Dr. Brovender's opinion "the greatest evidentiary weight." AR 24; *see also* AR 20 (noting that Dr. Brovender "essentially agreed" with Dr. Chen's RFC assessment, "with certain modifications"; adding that "I adopt the RFC of consultative examiner Dr. Chen, as the ME [Dr. Brovender] modified in his persuasive and probative testimony"); AR 474 (testimony of medical expert, Dr. Brovender, at ALJ hearing) (stating that "[t]here was an RFC in [Exhibit] 7F [*i.e.*, Dr. Chen's report] and I would agree with that"). Indeed, giving Dr. Brovender's opinion the great evidentiary weight in the absence of Dr. Chen's similar opinion would be problematic because Dr. Brovender never personally examined Mr. Walters. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) (noting that, in general, the opinion of a nonexamining physician has less weight compared to a treating or examining physician).

11

1      To the extent the Commissioner argues that there is substantial evidence to support the
2 ALJ's decision based on the opinion of Mr. Walters's treating physician, Dr. Lively, the Court
3 does not agree. Even if the Court were to reject Dr. Lively's opinion from December 2012 (as the
4 ALJ did), *see* AR 23, 304-06, Dr. Lively's December 2009 assessment (which found fewer
5 restrictions compared to the December 2012 assessment) in and of itself does not support the
6 ALJ's *entire* RFC assessment. *See* AR 248 (medical record from Dr. Lively) (simply stating
7 "ambulation as tolerated" and "[a]void any heavy weight lifting or carrying" but not addressing
8 other functional capabilities or restrictions).

9      Accordingly, the Court remands for further development of the record, and consideration
10 by the agency thereof, consistent with the above. The Court notes that its order of remand here
11 does not preclude Mr. Walters from participating in the putative class action, *Hart v. Colvin*, No.
12 C-15-0623 JST (N.D. Cal.) (asking for relief for a class based on the removal of Dr. Chen as a
13 panel physician).

D.     Step Five Analysis

      In his papers, Mr. Walters also makes various arguments as to how the ALJ's step five analysis was erroneous – *e.g.*, the ALJ improperly failed to make a finding on transferability of skills and improperly failed to ask the vocational expert if her testimony differed from the DOT. The Court need address these arguments because its ruling above regarding Dr. Chen may affect the agency's step five analysis.

### III.   CONCLUSION

      For the foregoing reasons, Mr. Walters's motion for summary judgment is granted, and the Commissioner's cross-motion denied. The Court remands, pursuant to sentence four and sentence six of § 405(g), for further proceedings consistent with the above. *See, e.g.*, *Hadera v. Colvin*, No. C-12-5315 EMC, 2013 U.S. Dist. LEXIS 119638, at *34 (N.D. Cal. Aug. 22, 2013) ("find[ing] that Plaintiff is entitled to a sentence four remand based on the ALJ's inadequate consideration of whether he has a severe mental impairment, and a sentence six remand based on new, material evidence related to his back problems"); *see also Jackson v. Chater*, 99 F.3d 1086, 1090, 1097 (11th Cir. 1996) (holding that a "dual basis remand is permissible"; adding that, in a dual basis

1  remand, "[t]he entry of judgment remanding the case does not end the jurisdiction of the district
2  court" as "the district court retains jurisdiction over the case pursuant to sentence six of
3  § 405(g)").
4      This order disposes of Docket Nos. 13 and 14.  The Clerk is instructed to enter judgment
5  and close the file.

7  **IT IS SO ORDERED**.

9  Dated: September 30, 2016

_____
EDWARD M. CHEN
United States District Judge